IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH POMARANSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-5063 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| CHICAGO PRIME PACKERS, INC., | ) | |
| and RONALD E. SILLS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Pomaranski brings his five-count complaint in this diversity lawsuit against his former employer, defendants Chicago Prime Packers, Inc. and Ronald E. Sills, asserting: (1) the violation of the Illinois Wage Payment and Collections Act, 820 ILCS 115/1 *et seq.* (Count I); (2) breach of contract (Count II); (3) conversion (Count III); (4) common law fraud (Count IV); and (5) alter ego/veil piercing (Count V). (Dckt. #1 ¶¶44–77). Defendants have moved to dismiss Counts III-V asserting that plaintiff has failed to state a claim upon which relief may be granted under the theories outlined therein. (Dckt. #14). For the reasons stated below, the Court grants defendants' motion.

I.  THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

The allegations of plaintiff's complaint and of the text of the exhibits he has attached to it (which trump the allegations of the complaint itself in the event of any conflict)[1] are as follows:

Defendant Chicago Prime Packers, Inc. (the "Company") is a corporation that is wholly-owned by defendant Ronald Sills, who also serves as the Company's Chairman. (Dckt. #1, ¶¶8,

---

[1] *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

1

10, 18). In December 2015, Sills hired plaintiff to serve as the Company's President and Chief Operating Officer. (*Id.*, ¶14). Sills and plaintiff executed an Employment Agreement between Chicago Prime Packers, Inc. and Joseph Pomaranski (the "Agreement") that was dated and became effective on December 28, 2015. (*Id.*, ¶¶18-23; Dckt. #1 at 16). The Agreement provides, in pertinent part, as follows:

> Mr. Pomaranski will commence his employment with Chicago Prime Packers Inc. on January 1, 2016 and be compensated $150,000 for the year providing he begins when stipulated and providing he works all year. Providing Chicago Prime Packer's net earnings for 2016 exceed 2015 earnings, Mr. Pomaranski has the option to continue his contract for 2017 and years following until Chicago Prime Packers is sold or 15 years. Only dishonesty, with Ron Sills or fraud committed against the company, can cause early termination, for cause, resulting in breach of contract and a resulting early dismissal with severance of only 1 month's pay.
>
> Mr. Pomaranski's position will be President and Chief Operating Officer of Chicago Prime Packers Inc. and report to Ron Sills, the Chairman. Mr. Pomaranski shall be responsible for the daily operation of the Company, increasing sales and profits, wise use of capital, inventory control and act as the general sales manager. Salary will be paid in 12 installments on the 25th of each month. Mr. Pomaranski will be a W2 employee.
>
> Mr. Pomaranski will be paid an annual bonus. The bonus will be paid no later than February 1, 2017 and on that date each subsequent year of his employment. The bonus will be calculated at 50% of the previous year's net earnings minus his salary. Net earnings are the gross revenue less all corporate expenses, including interest, and Mr. Pomaranski's salary; not including statutory deductions.

(Dckt. #1 at 16). Plaintiff worked for the Company and fully complied with the Agreement between 2015 and February 9, 2023, when he was terminated by Sill. (*Id.*, ¶¶2, 15, 24).

In 2021, the Company had over $21 million in sales, which was its largest yearly sales total to that date, and over $1.3 million in gross profits. (*Id.*, ¶¶16, 34). In 2022, the Company once again exceeded its prior yearly sales record by achieving over $22 million in sales. (*Id.*, ¶17). Nonetheless, between 2020 and 2023, Sills violated generally accepted accounting principles by charging the Company for numerous personal expenses that were not business expenses (including expenses related to his residences in Florida and Arizona and other expenses

2

related to his divorce). (*Id.*, ¶¶28-30). Sills' action in charging his personal expenses to the Company improperly decreased the Company's net earnings. (*Id.*, ¶31). In addition, defendants also misrepresented the Company's true net earnings when they improperly "wrote off" over $780,000 in accounts receivable as "bad debt" even though the vast majority of the alleged "bad debt" was collectible and was, in fact, collected in 2022 and 2023. (*Id.*, ¶¶36-38).

Sill directed various bookkeepers and accountants to make false entries in the Company's financial records. (*Id.*, ¶40). Defendants have kept two sets of accounting books, one which contained generally accurate records and the other which contained false records that were used for deceptive purposes to understate the Company's profits to taxing authorities and plaintiff. (*Id.*, ¶39). Plaintiff further alleges that defendants knowingly and intentionally misrepresented the Company's true net earnings to him for the years 2020 through 2023 for the purpose of underpaying him his bonus in violation of the Agreement. (*Id.*, ¶32). Plaintiff seeks damages in the amount of not less than $230,000. (*Id.*, ¶43).

**II.     LEGAL STANDARD**

Defendants move to dismiss plaintiff's conversion claim (Count III), his common law fraud claim (Count IV), and his alter ego/veil piercing claim (Count V). To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face" for each count at issue. *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722

F.3d 911, 915 (7th Cir. 2013). However, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id*. Moreover, plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Twombly*, 550 U.S. at 545, 555.

**III.    ANALYSIS**

    **A.    Plaintiff's Conversion Claim Is Fatally Flawed.**

Defendants first assert that plaintiff's conversion claim is nothing more than a repackaged version of his breach of contract claim and that Count III must be dismissed because plaintiff has failed to allege a viable conversion claim. The Court agrees for the reasons stated below.

Under Illinois law, a plaintiff must satisfy four elements to state a claim for conversion: (1) the plaintiff's right to the subject property; (2) plaintiff's unconditional right to immediate possession of the property; (3) plaintiff's demand for possession; and (4) the defendant's wrongful and unauthorized assumption of control or ownership over the property. *See Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008).[2] "The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002), *quoting In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985).

As the Seventh Circuit has recognized, "[a]n asserted right to money will rarely support a conversion claim." *United Cent. Bank v. Davenport Est. L.L.C.*, 815 F.3d 315, 318 (7th Cir. 2016). To establish conversion of money, a plaintiff must show that: (1) plaintiff's right to the money was "absolute" and "immediate;" (2) the money "*at all times* belonged to the plaintiff";

---

[2] The parties presume that Illinois law controls here, and the Court will do the same. *See Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992) (district court "will apply the substantive law of the forum state if the case is a diversity case and neither party argues choice of law.").

(2) defendant converted the money for its own use; and (3) that the money at issue can be described as "a specific fund or specific money in coin or bills." *Horbach*, 288 F.3d at 978 (emphasis in original);[3] *United Cent. Bank*, 815 F.3d at 318; *Triumph Packaging Grp. v. Ward*, No. 11 C 7927, 2012 WL 5342316, at *5 (N.D.Ill. Oct. 29, 2012) (same). "To be specific chattel, money need not be segregated or earmarked, but it must at least be a specific fund or specific money in coin or bills, of determinate amount and identifiably distinct." *Richelieu Foods, Inc. v. New Horizons Warehouse Distribution Ctr., Inc.*, No. 12 C 7005, 2013 WL 12621643, at *6 (N.D.Ill. Mar. 20, 2013) (internal quotation marks omitted); *see also Dachev v. Rich Am., Inc.*, No. 17-CV-5729, 2019 WL 7290940, at *5 (N.D.Ill. Dec. 30, 2019) (internal quotation marks omitted) ("Money is a specified and identifiable fund when it is not an estimate but rather a specific amount transferred to [the defendant] from an outside source.").

Plaintiff's attempt to plead a conversion claim here fails for two reasons. First, plaintiff has not alleged the existence of a specific fund or specific money that defendants have converted. Unlike in the cases plaintiff relies upon, plaintiff does not allege that he deposited any funds with defendants, or that any third party deposited funds owned by him with defendants. *Cf. Wei Quan v. Arcotech Uniexpat, Inc.*, 122 N.E.3d 767, 772-73 (Ill.App.Ct. 2018) (holding that plaintiff pled a conversion claim against a defendant executive who refused to authorize the return of funds that plaintiff had deposited with the defendant executive's corporation where plaintiff's

---

[3] Plaintiff contends that this Court should disregard the Seventh Circuit's decision in *Horbach* because it is "outdated" and purportedly inconsistent with a trio of decisions from the Illinois Appellate Court. (Dckt. #20 at 8-9). Even if plaintiff were correct (he is not), this Court is not at liberty to disregard binding Seventh Circuit precedent. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, . . . so district judges must follow the decisions of this court whether or not they agree.") (citations omitted); *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 634 (7th Cir. 2020) ("The precedential force of these [Seventh Circuit] decisions is not impaired by a handful of Illinois Appellate Court opinions arguably stating the law differently.").

agreement regarding the refundable nature of his deposit was with the corporation and not the defendant executive); *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 282, 285-87 (Ill.App.Ct. 2004) (reversing grant of summary judgment against a plaintiff who asserted that defendant improperly converted funds that had mistakenly been paid to it by a third party who owed the funds in question to plaintiff); *Roderick Development Inv. Co., Inc. v. Community Bank of Edgewater*, 668 N.E.2d 1129, 1135 (Ill.App.Ct. 1996) (finding a valid conversion claim where the money that the Bank allegedly converted was a specific amount of funds that was transferred to the Bank by a third party and owned by plaintiff).

Furthermore, plaintiff never had possession of, or legal title to, the funds that he claims that defendants here have converted. *See, e.g., TABFG, LLC v. Pfeil*, No. 08 C 6979, 2009 WL 3617514, at *4 (N.D.Ill. Oct. 28, 2009) (dismissing conversion claim were, among other things, "at no time did the plaintiff have possession, or legal title, to the funds sought" when the right to the funds arose from the terms of the parties' agreement which provided for distribution of 50% of profits less certain expenses, fees and costs). Nor did the parties' Agreement – contrary to plaintiff's allegation, (Dckt. #1, ¶58)[4] – require the Company to "segregate" his share of the net earnings or to deposit such funds in an escrow fund or segregated bank account. *See, e.g., Napleton v. Ford Motor Co.*, No. 07 C 2143, 2007 WL 9815, at *1 (N.D.Ill. Aug. 29, 2007).

Instead, the sole basis of plaintiff's legal claim to the funds that he seeks in this lawsuit comes from the parties' Agreement, which created a bonus payment obligation on behalf of the Company. A conversion claim cannot be founded upon such an obligation. Again, ss the

---

[4] Because plaintiff's allegation that the Agreement required the Company to "segregate" his share of the net earnings is not supported by the text of the Agreement itself, the Court will disregard it. *See Northern Indiana Gun*, 163 F.3d at 454.

Seventh Circuit has recognized, "[a]n asserted right to money normally will not support a claim for conversion." *Horbach*, 288 F.3d at 978; *Song v. PIL, LLC*, 640 F.Supp.2d 1011, 1017 (N.D.Ill. 2009), *quoting In re Thebus*, 483 N.E.2d at 1260 ("'[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money.'"). Consequently, plaintiff's conversion claim must be dismissed for this reason. *See, e.g., GC Am. Inc. v. Hood*, No. 20-CV-03045, 2022 WL 910556, at *8 (N.D.Ill. Mar. 29, 2022) (dismissing conversion claim where the "facts merely allege an obligation to pay money, which cannot serve as the foundation for a conversion claim.") (cleaned up); *McNichols v. Weiss*, No. 18 C 2125, 2018 WL 5778413, at *7 (N.D.Ill. Nov. 2, 2018) ("an action for conversion of funds may not be maintained to satisfy the mere obligation to repay money."); *Johnson v. Melton Truck Lines, Inc.*, No. 14 C 07858, 2016 WL 8711494, at *10 (N.D.Ill. Sept. 30, 2016) ("Johnson's claim is for an alleged obligation to pay wages he lost as a result of Melton's breach of contract and, as such, fails to state a claim for conversion."); *Song*, 640 F.Supp.2d at 1017 (dismissing a conversion claim arising out of royalties that the defendant was contractually obligated to pay plaintiff – *i.e.*, a "breach of contract claim improperly dressed as a conversion claim").

      Plaintiff's effort to allege a conversion claim fails for a second reason as well: namely, plaintiff does not – and cannot, consistent with the Agreement – make the required allegation that the funds he seeks "at all times belonged unconditionally to him." *Horbach*, 288 F.3d at 978; *Hood*, 2022 WL 910556, at *8 (same). Instead, per the Agreement, plaintiff's right to the alleged unpaid bonus funds he seeks was conditional and not absolute. In particular, his right to the payment of any bonus whatsoever for each year of his contract was conditioned on the Company having "net earnings" remaining after the Company deducted all corporate expenses, including interest and plaintiff's salary from its gross revenue for that year. (Dckt. #1 at 16).

Moreover, plaintiff did not have a right to receive payment of his bonus for a year until February 1 of the successive year. (*Id.*).

The existence of these conditions defeats plaintiff's conversion claim because they establish that the unpaid bonus funds that plaintiff seeks did not at all times absolutely and unconditionally belong to him.[5] *See, e.g., Triumph Packaging*, 2012 WL 5342316, at *5 (dismissing conversion claim where "[t]he bonus and compensation funds did not belong to Ward at all times because they were 'conditional and attenuated, not absolute and immediate.'"); *McCammon-Chase v. Circle Fam. Care, Inc.*, No. 09 C 7450, 2010 WL 2925893, at *7 (N.D.Ill. July 23, 2010) ("Pursuant to that language, McCammon-Chase is not entitled to the bonuses at issue until a condition is met, namely, a 'satisfactory reconciliation.' Regardless of how simple or onerous that condition may be, the bonuses cannot have 'at all times belonged to' McCammon-Chase if there is a condition that had to be met before she is entitled to those monies.") (citing cases); *DeGeer v. Gillis*, 707 F.Supp.2d 784, 791 (N.D.Ill. 2010) (dismissing conversion claim where plaintiff "was not entitled to a bonus, let alone the specific sum he seeks, unless certain conditions were met" because his right to the bonus was "conditional and attenuated, not absolute and immediate.").

Thus, plaintiff's conversion claim is dismissed for the two reasons specified above and the dismissal of this claim will be with prejudice because any amendment would be futile. Simply put, plaintiff cannot allege a conversion claim consistent with the text of his Agreement, which creates an obligation for the Company to pay him an annual bonus only to the extent that specified conditions have been satisfied. *See, e.g., Swervo Ent. Grp., LLC v. Mensch*, No. 16-

---

[5] Plaintiff's allegation that he had a right to the "immediate, absolute, and unconditional possession" of the allegedly unpaid bonus funds (Dckt. #1, ¶59), is trumped by the text of the Agreement which imposed the above conditions on plaintiff's right to the bonus payments. *See Northern Indiana Gun*, 163 F.3d at 454.

CV-4692, 2017 WL 1355880, at *3 (N.D.Ill. Apr. 3, 2017), *reconsideration granted in part on other grds.*, 16-CV-4692, 2017 WL 11562550 (N.D.Ill. Oct. 16, 2017) (dismissing conversion claim with prejudice after finding that amendment would likely be futile where plaintiff's right to the funds in question was "subject to condition" and was not "absolute").

    B.    **Plaintiff Has Failed To Allege A Common Law Fraud Claim That Is Sufficiently Distinct From His Breach Of Contract Claim.**

Defendants next argue that plaintiff's common law fraud claim in Count IV should be dismissed because it reflects an impermissible attempt to restyle his breach of contract claim as fraud, and it fails to meet the heightened pleading standard required under Rule 9(b). The Court agrees with defendants' first argument and does not reach the second.

Under Illinois law, a common law fraud claim requires plaintiff to prove: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008). In this case, plaintiff alleges in his fraud claim that the defendants made material misrepresentations regarding the amount of the Company's net earnings, (Dckt. #1, ¶65), and this allegation also forms the heart of his breach of contract claim, (*Id.*, ¶32).[6] Moreover, plaintiff seeks damages for his fraud claim (namely, an amount of no less than $230,000) that is identical to the amount of damages he seeks for the breach of contract claim against the Company. (Dckt. #1 at 9, 11).

---

[6] In paragraph 32, plaintiff alleges that: "Defendant Sills and Defendant Chicago Prime knowingly and intentionally misrepresented Defendant Chicago Prime's true net earnings to Plaintiff Pomaranski – for the years 2020, 2021, 2022, and 2023 – for the purpose of underpaying Plaintiff for those years in violation of the Employment Agreement."

Where, as here, a plaintiff "has failed to identify any fraudulent act distinct from the alleged breach of contract" and the damages plaintiff seeks are the same damages sought under their breach of contract claim, the plaintiff's common-law fraud claim must be dismissed because it "is just a reformulation of the contract claim." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011); *Tara Brands LLC v. Vaimo, Inc.*, No. 21 C 4780, 2022 WL 704811, at *3 (N.D.Ill. Mar. 9, 2022) (cleaned up) (a plaintiff cannot take its breach of contract claim and dress it up in the language of fraud, and plaintiff must allege "fraudulent acts that are distinct from the alleged breach of contract" to state a fraud claim); *Clay Fin. LLC v. Mandell*, No. 16 C 11571, 2018 WL 482339, at *12 (N.D.Ill Sept. 28, 2018) (where the only damages claimed on account of the fraud are the damages plaintiff seeks under its contract claim, "[s]uch contractual damages do not in themselves establish damages for purposes of a common law fraud claim."); *Torres v. Allstate Indem. Co.*, No. 14 C 2830, 2015 WL 920978, at *2 (N.D.Ill. Mar. 2, 2015) (dismissing common law and statutory fraud claims where they rested on the same factual foundation as the plaintiff's breach of contact claim).

Accordingly, the Court will dismiss the common law fraud claim alleged in Count IV, and the dismissal will be without prejudice. If plaintiff chooses to replead his fraud claim, he must allege fraudulent acts that are distinct from the alleged breach of contract and damages that are distinct from his contractual damages. *See Tara Brands*, 2022 WL 704811, at *3; *Mandell*, 2018 WL 482339, at *12. Any replead fraud claim must, of course, also comply with Rule 9(b).

### C.  Plaintiff's Alter Ego/Veil Piercing Claim Must Be Dismissed Because It Is Not A Standalone Substantive Claim Under Illinois Law.

Finally, defendants asserts that the alter ego/veil piercing claim that plaintiff alleges in Count V must be dismissed because such a claim is not a standalone substantive cause of action under Illinois law. The Court agrees. As the Seventh Circuit has made clear, "[v]eil-piercing 'is

10

not itself an action; it is merely a procedural means of allowing liability on a substantive claim.'" *Golin v. Neptune Mgmt. Corp.*, 704 Fed.Appx. 591, 594 (7th Cir. 2017), *quoting Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004); *A.L. Dougherty Real Estate Mgmt. Co., LLC v. Su Chin Tsai*, 98 N.E.3d 504, 515 (Ill.App.Ct. 2017) ("Piercing the corporate veil is not a separate cause of action but instead is a means for imposing liability in an underlying cause of action."). Accordingly, defendants' request to dismiss Count V will be granted. *See, e.g., Hyer Standards, LLC v. Super G Cap., LLC*, No. 18 C 6669, 2020 WL 2836774, at *6 (N.D.Ill. June 1, 2020) (granting motion to dismiss a corporate veil piercing claim). The Court notes that plaintiff will be free to pursue his alter ego/veil piercing theory in conjunction with the breach of contract claim he alleges against the Company in Count II to the extent his theory is supported by the evidence.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss, (Dckt. #14), is granted. Counts III and V of plaintiff's complaint are dismissed with prejudice and Count IV is dismissed without prejudice to plaintiff filing an amended complaint that is compliant with this Memorandum Opinion on or before September 18, 2024. Defendants will have until October 9, 2024 to answer or otherwise plead to plaintiff's operative complaint. The parties are ordered to meet and confer and to file a joint status report setting forth a proposed fact and expert discovery schedule on or before September 18, 2024.

**DATE: August 27, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**